| | |
|---|---|
| GREGG S. BOSNAK,<br><br>    Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, LAGUNA HONDA HOSPITAL AND REHABILITATION CENTER, EDWARD SHIELS, STEVEN KONEFFKLATT,<br><br>    Defendants. | Case No. 14-1429 MEJ<br><br>[~~PROPOSED~~] FINDINGS OF FACT AND CONCLUSIONS OF LAW [**AS AMENDED**] |

## INTRODUCTION

In this employment discrimination case, Plaintiff Gregg Bosnak alleges Defendants violated his civil rights by discriminating against him in the terms of his employment on the basis of his race, and/or of the race of other employees with whom he associated. *See* Second Am. Compl. ("SAC"), Dkt. No. 39. He also alleges Defendants violated his right to due process by failing to comply with their own internal disciplinary procedures. *See id.*

Bosnak brings the following causes of action: (1) Retaliation in violation of Title VII of the Civil Rights Act of 1964, *as amended* ("Title VII"); (2) Associational Discrimination in violation of Title VII of the Civil Rights Act of 1964, *as amended* ("Title VII"); (3) Disparate Treatment in violation of Title VII of the Civil Rights Act of 1964, *as amended* ("Title VII"); (4) Disparate Treatment in violation of FEHA under California Government Code § 12940(a); (5) Retaliation in violation of FEHA under California Government Code § 12940(h); (6) Discrimination Because of Race - Section 1981 in violation of The Civil Rights Act of 1866; (7) Retaliation in violation of The Civil Rights Act of 1866; (8) Denial of Equal Protection in violation of the Civil Rights Act of 1981; and (9) Denial of Due Process in violation of the Civil Rights Act of 1871.

Defendants asked the Court to grant them summary judgment on each of Plaintiff's claims. *See* Defs.' Mot., Dkt. No. 87. Plaintiff asked the Court to grant him summary judgment on (1) his due process claim, and (2) 25 affirmative defenses Defendants asserted in their answer to the SAC. *See* Pl.'s Mot., Dkt. No. 88. The matter was fully briefed. *See* Defs' Opp'n, Dkt. No. 90; Pl.'s Opp'n, Dkt. No. 91; Defs.' Reply, Dkt. No. 92; Pl.'s Reply, Dkt. No. 93. The Motions came on for hearing on September 7, 2017, and the Court asked Plaintiff to identify the evidence in the record that created a triable issue of fact about his claims. *See* 9/7/2017 FTR Rec. at 10:32-10:59. On September 8, 2017, the Court GRANTED Defendants' Motion for Summary Judgment in full and DENIED Plaintiff's Motion, and requested that Defendant file a succinct [Proposed] Findings of Facts and Conclusions of Law. Dkt. No. 98.

## BACKGROUND

### A. Bosnak's Employment History with DPH

#### 1. Bosnak is a Chef at LHH from 2008 - 2010

Bosnak was originally hired by the City and County of San Francisco ("CCSF") as a chef at Laguna Honda Hospital ("LHH"), a part of San Francisco's Department of Public Health ("DPH"). He held that position from April of 2008 until June of 2010. (Deposition of Gregg Bosnak, June14, 2016 and June 30, 2016 ("Bosnak Dep.") 18:28-19:2, Dkt. No.87-3). In 2010, two chefs at the San Francisco Unified School District ("School District") were laid off due to lack of funds. (Deposition of Shawn Sherburne as Person Most Knowledgeable ("PMK") Regarding the Hiring of Rodney Garrick at LHH in 2010, May 4, 2017, ("Sherburne Dep. I") 26:12-27:12, Dkt. No. 87-3). Under the civil service rules of San Francisco, when a permanent civil service employee is laid off in one department within the City, if they have more seniority than an employee currently holding that position in any other Department within the City, the more senior laid off employee has the right to "bump," or essentially take the job of the less senior employee, who is then laid off instead. (Sherburne Dep. I 27:13-28:17.) The date used for this purpose of determining seniority ("seniority date") is the date each employee became a permanent civil service employee with the City. (Sherburne Dep. I 27:13-28:17). The two chefs laid off by the School District were Leonard Lee Collins, Jr., who had a seniority date of August 2, 1999 (Deposition of Shawn Sherburne as Person

2

Most Knowledgeable ("PMK") Regarding the Hiring of Charles Branner at the Juvenile Probation Department ("JPD") in 2010, May 4, 2017, ("Sherburne Dep. II") 26:9-27:15, Dkt. No. 87-3), and Rodney Garrick, who had a seniority date of February 7, 2009.  (Sherburne Dep I. 60:2-7.)  LHH had one vacancy for the chef's position at the time Collins and Garrick were laid off, which was taken by Collins.  Coincidentally, Garrick, the other laid off chef at the School District, and Bosnak had the same seniority date of February 17, 2009.  (Sherburne Dep. I, 60:2-7, 64:4-15, Ex. 9.)

In the case of a tie of seniority date, the San Francisco main Department of Human Resources (DHR), which is responsible for this "bumping" process, has a detailed tie-breaking procedure.  (Sherburne Dep. I 54:10-57:6.)  First, DHR looks at the rank of each employee, which is the number at which they were originally ranked based on their test scores when they applied for the position they hold.  (Sherburne Dep. I 54:14-18.)  In this case, both Garrick and Bosnak were rank number one.  (Sherburne Dep. I 59:4-16, Ex. 8, 64:4-11, Ex. 9.)  In that case, DHR has a further tie-breaker based on the last number of each employee's social security number.  (Sherburne Dep. I 55:15-57:6, Ex. 7.)  In this tie-breaker, each digit is randomly assigned a rank. (*Id.*)  Based on the last digits of their social security numbers, Bosnak lost the tie-breaker, and was thus "bumped" by Garrick.  (Deposition of Kathleen Khaw, September 15, 2016 ("Khaw Dep.") 52:2-20, Ex. E, Dkt. No. 87-3.)  In other words, Bosnak was laid off as a chef at LHH and Garrick transferred from the School District to take his place.  When Bosnak was laid off as a chef, he was placed on a "Holdover roster," meaning that in the event that any chef position became available within the City within five years of his layoff, Bosnak would have an automatic right to that position.  (Declaration of Steven Ponder in Support of Defendants' Motion for Summary Judgment ("Ponder Dec.") ¶ 3, Dkt. No. 87-4).

### 2.    Bosnak Returns to LHH as a Cook from 2012-2013

After Bosnak was laid off from his position as a Chef at LHH, he attempted to return to LHH by applying for several other jobs in Nutrition Services, including Cook and Assistant Cook.  (Bosnak Dep. 120:19-121:15, 123:22-124:19, 125:16-23, 127:14-128:7, 128:12-21, 164:20-165:25.)  His former supervisors, individual defendants, Director of Food Services Ed Shiels and Assistant Administrator of Nutrition Services Steve Koneffklatt[1], attempted to assist him in his attempts to

---

[1] Both Shiels and Koneffklatt are now retired and no longer work at LHH.

return to LHH, but he did not receive the positions he applied for, either because he was considered overqualified (Declaration of Ray Dutton in Support of Defendants' Motion for Summary Judgment ("Dutton Dec.") ¶¶ 4-9, Ex. A-D, Dkt. No. 87-7), he did poorly in the interview (Deposition of Loretta Cecconi, June 10, 2016 ("Cecconi Dep.") 45:24-48:13, Dkt. No. 87-3), or because he simply failed to respond to inquiries attempting to ascertain his interest in being interviewed for the positions. (Declaration of Kathleen Khaw in Support of Defendants' Motion for Summary Judgment ("Khaw Dec.") ¶¶ 4, 5, Ex. A, Dkt. No. 87-6; Declaration of Karen Hill in Support of Defendants' Motion for Summary Judgment ("Hill Dec.") ¶¶4-10, Ex. A, Dkt. No. 87-5).

In May of 2011, Bosnak requested that SF DHR grant him permission to be considered for a Near List Appointment. (Bosnak Dep. 137:12-15, Ex. 29.) A Near List appointment is a very rarely used mechanism within the City, by which a former employee who has been laid off can be appointed to a position that is substantially similar to the position in which he was laid off. [2] (Ponder Dec. ¶¶ 4, 5, 7, Ex. A.) The Near List appointment process has historically been used in times of mass layoff during difficult economic times, and is under the sole discretion of the Human Resources Director of the City. (Ponder Dec. ¶¶ 5, 7, 9.) Shawn Sherburne, the Client Services Manager for DHR, testified that he has not seen this mechanism used since he obtained his position in 2010, and DPH Human Resources Manager Willie Ramirez testified that he has seen it used only twice since he has been working for DPH, i.e., in the last fourteen years, both of which were for mass lay-offs. (Deposition of Willie Ramirez, June 24, 2016 ("Ramirez Dep.") 39:8-41:18, Dkt. No. 87-3; Declaration of Willie Ramirez in Support of Defendants' Motion for Summary Judgment ("Ramirez Dec.") ¶ 2, Dkt. No. 87-8.) The Near List is generally used when a group of people on a Holdover list have been unemployed for some time, and have been unable to return to employment off their Holdover list. (Ponder Dec. ¶ 5.) For this reason, an employee cannot even be considered for a Near List appointment until they have been on a Holdover list for at least 90 days. (Ponder Dec. ¶ 6.) Bosnak was granted Near List status on August 8, 2011. (Bosnak Dep. 137:18-25, Ex. 31.) He was appointed to a position from the

---

[2] This is distinct from the Holdover Roster mentioned in Section I.1. above, in that the holdover roster allows one the right to return only to the exact same position from which one was laid off.

Near List procedure and returned to LHH as a cook on January 25, 2012.  (Bosnak Dep. 27:12-28:4, Ex. 3.)

Upon Bosnak's return to LHH in 2012, he began to exhibit a number of behaviors that were alarming to both his superiors and his peers.  These behaviors included: several instances of flicking a knife at a colleague while speaking to them in an intimidating manner (Bosnak Dep. 48:1-6, Ex. 8; Din Dep. 99:6-100:10, 103:12-104:4, Dkt. No. 87-3); harassing two of his subordinates by repeatedly telling them that they were not qualified for their jobs (Bosnak Dep. 48:1-6, Ex. 8); and aggressive and angry outbursts toward his staff (Bosnak Dep. 48:1-6, Ex. 8).  He was also disrespectful to his supervisors, including an incident wherein he ignored the fact that Director of Food Services Ed Shiels was speaking to Chef Leonard Collins, interjected and began having an unrelated conversation with Collins, and brazenly ignored Shiels' attempts to point out that he was in the middle of a conversation with Collins.  (Deposition of Edward Shiels, June 2, 2016 ("Shiels Dep.") 67:15-68:1, Ex. G, Dkt. No. 87-3; Bosnak Dep. 56:18-57:10, Ex. 12.)

Bosnak was counseled and warned on several occasions regarding his unacceptable behavior: he was counseled in June of 2012 regarding his use of a pocketknife at work (Bosnak Dep. 56:4-8, Ex. 8), again on November 15, 2012 regarding his unprofessional and aggressive behavior toward his subordinate, Don Chan (Bosnak Dep. 48:1-6, Ex. 8); and a third time in November and December of 2012 regarding his communication style, lack of clarity, and negative and offensive language toward his colleagues (Bosnak Dep. 48:1-6, Ex. 8, 72:9-12, Ex. 16).  LHH notified Bosnak on February 19, 2013, that it was considering terminating him for this pattern of behavior, provided him with the grounds for the potential termination, and offered Bosnak a chance to meet with management to give him a chance to respond to the allegations against him.  (Bosnak Dep. 48:1-6 Ex. 8.)  In advance of that meeting, Bosnak's own union representative sent an email to Willie Ramirez strongly urging Ramirez to have security present at the meeting, preferably a sheriff.  (Ramirez Dep. 85:12-20, 86:7-87:2, Ex. K.)  The meeting subsequently occurred, and Bosnak promised to modify his behavior. (Ramirez Dep. 61:6-21.)  The Department essentially decided to give Bosnak one last chance. (Ramirez Dep. 80:6-81:5.)

However, his behavior did not improve. In April of 2013, Bosnak engaged in an incident wherein he was disrespectful to his direct supervisor, Chef Garrick, which was the last straw. Garrick asked Bosnak to correct a recipe for Spanish rice because the rice had burned in the first batch, and Bosnak deliberately cooked it wrong several more times before correcting it in an attempt to undermine Garrick. (Bosnak Dep. 64:14-66:12, Ex. 14; Garrick Dep. 47:2-48:5.) LHH sent Bosnak the official notice of termination on April 18, 2013. (Ramirez Dec. ¶ 7, Ex. A.)

### 3. Bosnak is Reinstated by an Arbitrator

After being terminated in 2013, Bosnak challenged his termination through a formal grievance procedure through his union. (Ramirez Dec. ¶ 11.) The grievance went to a full arbitration hearing in front of an arbitrator, and on August 5, 2014, the arbitrator reinstated Bosnak as a cook, finding that LHH had not sufficiently progressively disciplined Bosnak prior to terminating him. (Ramirez Dep. 95:15-96:17; Ramirez Dec. ¶ 11.) Bosnak was reinstated with full back-pay, minus a two-week suspension as discipline for the conduct Bosnak had been terminated for. (Ramirez Dec. ¶ 12.) Subsequent to the arbitrator's decision, Bosnak and his union came to an agreement with DPH that he would return as a cook to DPH, but at a new location, at Zuckerberg San Francisco General Hospital (ZSFGH), in the hope that this new location would foster a more successful working environment for Bosnak. (Ramirez Dep. 45:3-12; Ramirez Dec. ¶13.) However, in January of 2015, Chef Collins who originally bumped Bosnak in 2010, retired, thus leaving a vacancy in the chef position at LHH. (Ramirez Dec. ¶¶ 14, 15.) Bosnak, who was still on the Holdover list from his lay-off in 2010 from the chef position, regardless of the fact that he had returned to LHH as a cook, had an automatic right to that position. He returned to LHH to assume the chef position vacated by Collins in March of 2015. (*Id.*)

### B. Bosnak Complains to the DFEH and the EEOC

Bosnak made his first complaint of race discrimination and retaliation at LHH on September 2, 2010, to the California Department of Fair Employment and Housing. (Bosnak Dep. 120:6-16, Ex. 19.) He received a Right to Sue Notice from the agency on the same day. (Bosnak Dep. 121:9-122:1, Ex. 21.) LHH received notice of this complaint on September 7, 2010. (Ramirez Dec. ¶ 24, Ex. D.)

Bosnak filed a second complaint with the DFEH on April 12, 2011 which was cross filed with

the EEOC, further alleging retaliation at LHH.  (Bosnak Dep. 122:18-24, Ex. 22.)  He received a Right

to Sue Notice for that complaint on June 12, 2012.  (Super Dec. ¶16, Ex. O.)

Finally, Bosnak filed a third complaint with the DFEH on April 16, 2013.  (Super Dec. ¶17,

Ex. P.)  He subsequently submitted a revised version of the same complaint on June 22, 2013.  (Super

Dec. ¶17, Ex. P.)  Laguna Honda Hospital received notice of this complaint on July 31, 2013.

(Ramirez Dec. ¶ 25, Ex. E.)

### C. Bosnak's Allegations of Race Discrimination

Bosnak alleges that he was discriminated on the basis of his race: Caucasian.  He alleges that

the majority of the employees in the Nutrition Services Department at LHH are not of Caucasian

descent, and he has been treated differently because of the fact that he is or has been one of the only

Caucasian employees.  (Bosnak Dep. 40:3-13.).  Bosnak alleges that he has been discriminated against

because of his race in the following ways:

- Bosnak alleges that several employees, namely Allan Zhu, Don Chan, and Dennis Won, continued to work at LHH after Bosnak was bumped in 2010.  He alleges that their positions were eliminated just as his was, but these employees were allowed to continue to work in a different position, rather than being laid off and made to reapply as Bosnak was.  (Bosnak Dep. 36:12-40:2.)

- Bosnak alleges that City procedures were not followed regarding his layoff (or being "bumped") in 2010.  (Bosnak Dep. 40:14-46:2.)

- He alleges that progressive discipline was not properly followed with regard to his termination from LHH in 2013. (Bosnak Dep. 47:9-57:17.)

- Bosnak feels he is currently held to a different standard from the other chefs at LHH.  Bosnak Dep. 60:22-63:23.)  He has not received any discipline at LHH since he returned in 2015.  (Bosnak Dep. 41:14-17.)  There are two other chefs at LHH currently.  One of them, Garrick, is African American.  (Ramirez Dec. ¶ 17.)  The other, Joe Hoeschen, is Caucasian.  (Ramirez Dec. ¶ 18.)

- He was never given a Performance Appraisal Review (PAR) when he was a cook (from 2012 – 2013).  (Bosnak Dep. 67:17-73:8.)

- Bosnak alleges that another cook, Robert Hunt, had an issue regarding burnt rice but was never disciplined for it.  Whereas Bosnak was disciplined for a similar incident and that incident was ultimately included as one of the events that led to his termination in 2013.  (Bosnak Dep. 90:4-91:17.)  According to Bosnak, Hunt's supervisor was Collins, whereas the supervisor who disciplined Bosnak for his rice incident was a different Chef, Rodney Garrick.  (Bosnak Dep. 64:14-66:12.)  Hunt, like Bosnak, is Caucasian.  (Ramirez Dec. ¶ 16.)

- Bosnak also contends that Hunt received a PAR in his first 90 days in his position whereas Bosnak did not.  (Bosnak Dep. 99:8-100:14.)

- Two FMLA requests submitted by Bosnak were initially denied on a technicality but then later accepted. (Bosnak Dep. 102:15-106:3.)

- Bosnak feels that the arbitration on his termination, which ultimately lead to his reinstatement, took longer than the time periods proscribed in his union's contract with the Hospital, and this unnecessarily delay was discriminatory. (Bosnak Dep. 108:10-25.)

### D. Bosnak's Complaints of Associational Discrimination

Bosnak alleges that much of the conduct described above is discriminatory based on his association with Leonard Collins (African American) and Arnold Chew (Chinese), each of whom is a party to a lawsuit which has been related to his by the Court: *Leonard Lee Collins, Jr., v. CCSF et al.*, U.S. Northern District Court No. 13-3456 MEJ, and *Arnold Chew v. CCSF et al.*, U.S. Northern District Court No. 13-5286 MEJ.

Bosnak states that his relationship with both Mr. Collins and Mr. Chew is work-based – he has never socialized with either of them outside of work. (Bosnak Dep. 30:19-31:10, 31:24-32:3) He stated there is nothing about his relationship with either of them that sets it apart from his relationship with any other Chef (Collins) or Trayline Supervisor (Chew) at the Hospital. (Bosnak Dep. 31:7-10, 32:15-22.) Collins and Chew each agree with this assessment. (Collins Dep. 25:20-16:2; Chew Dep. 23:16-24:3.) Both Collins and Chew have supported Bosnak via speaking with him and empathizing, but neither has assisted him with his lawsuit or any protected activity, nor has he assisted them in such a way. (Bosnak Dep. 31:11-33:2; Collins Dep. 28:1-29:5; Chew Dep. 25:23-27:12.) None of them has ever heard anyone at LHH make a negative comment on any association or relationship between them. (Bosnak Dep. 82:8-11; Collins Dep. 29:6-12; Chew Dep. 29:3-9.)

### E. Bosnak's Complaints of Retaliation

Bosnak alleges that he was retaliated against in the following ways:

- Several employees, namely Allen Zhu, Don Chan, and Dennis Won, continued to work at LHH after Bosnak was bumped in 2010. Bosnak alleges that their positions were eliminated just as his was, but these employees were allowed to continue to work in a different position, rather than being laid off and made to reapply as Bosnak was. (Bosnak Dep. 118:6-120:12, 138:12-141:4.)

- Bosnak also alleges that his rehire after being bumped in 2010 was somehow delayed in retaliation for alleged EEOC complaints he filed in 2010 and 2011. (Bosnak Dep. 128:13-138:11.) Bosnak stated that one specific job he applied for after he was bumped, the 2650 Assistant Cook position he applied for in late 2011 that was given to Adrianna Lobos, was denied to him as retaliation for his DFEH and EEOC complaints

and for complaining to the Civil Service Commission.[3] (Bosnak Dep. 119:4-120:5.)

## F.  Bosnak's Complaints of Denial of Equal Protection

Bosnak feels he was denied equal protection under the law in the following ways:

- He alleges that he was not given the same progressive discipline as other employees in the Department were who were disciplined but not terminated. (Bosnak Dep. 156:24-163:19.) These employees, Steve Ojala, Allen Zhu, Alcira Marino, and Dennis Won, were all Food Service Workers, and therefore not similarly situated to Bosnak. (Ramirez Dec. ¶¶ 19-22.)

- Bosnak alleges that he was denied equal protection with regard to the positions he applied for after he was laid off in 2010. (Bosnak Dep. 163:20-168:7.)

- Bosnak feels that the alleged delay in time for his termination arbitration, as referred to above, was a denial of equal protection. (Bosnak Dep. 168:25-170:3.)

## G.  Bosnak's Complaints of Denial of Due Process

Bosnak Claims that the following conduct was a denial of his right to due process:

- All of the conduct alleged above as denial of his right to equal protection under the law. (Bosnak Dep. 171:10-172:24.)

- Bosnak was not given the chance to meet with human resources at the time he was bumped in 2010 and have his rights explained to him. (Bosnak Dep. 172:25-173:13, 177:12-23.)

- Bosnak feels that other employees had positions that were eliminated and were allowed to continue to work or simply switched to another position, whereas he was not. (Bosnak Dep. 173:14-174:7.)

- Bosnak made two FMLA requests which were initially denied on a technicality and then later approved. (Bosnak Dep. 174:15-175:25.)

- He failed to receive a Performance Appraisal Report when he was a cook. (Bosnak Dep. 176:1-177:11.)

- He was not given the proper procedure when he returned to LHH in 2012 or 2015 in terms of orientation, proper introductions, and memos. (Bosnak Dep. 177:24-178:15.)

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a

---

[3] Bosnak complained to San Francisco's Civil Service Commission regarding LHH's failure to hire him for this 2650 position on February 13, 2011. (Bosnak Dep. 130:16-131:9, Ex. 24, 132:15-25, Ex. 27.) This complaint is not protected conduct as Bosnak does not complain of discrimination, retaliation or harassment based on a protected category therein.

matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 324-25.

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250. All reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). However, it is not the task of the Court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *see also Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

**THE COURT FINDS AS FOLLOWS:**

## I.     BOSNAK'S DISCRIMINATION CLAIMS

To prevail on a claim for employment discrimination under Title VII, a plaintiff bears the burden of proving that the defendant acted with discriminatory animus. *Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1180 (9th Cir. 1998). On a motion for summary judgment, courts apply the

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) "shifting burden" analytical framework. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103, 1105 (9th Cir. 2008). Under this framework, a plaintiff must first prove a *prima facie* case by establishing that: (1) he is a member of a protected class; (2) he was qualified for the position she sought or was performing competently in the position she held, (3) that he suffered an adverse employment action; and (4) that there is a causal link between her protected status and the adverse action. *Surrell*, 518 F.3d at 1105-06; *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004).

Bosnak's state law claims under California's Fair Employment and Housing Act (FEHA) utilize this same shifting burdens standard. *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000); *Beyda v. City of Los Angeles*, 65 Cal.App.4th 511, 517 (1998) (the anti-discrimination objectives and overriding public policy purposes of Title VII and FEHA are identical and, thus, it is appropriate to consider federal cases interpreting Title VII when analyzing FEHA claims).

When analyzing employment discrimination claims under § 1981, a district court is guided by Title VII analysis. *Surrell*, 518 F.3d at 1103; *Manatt v. Bank of America, NA,* 339 F.3d at 799 (9th Cir. 2003) (federal courts apply the same standards in § 1981 actions as they do in Title VII race discrimination cases).

### A. Plaintiff Failed to Identify Evidence Creating a Triable Issue of Fact That There Was a Causal Link Between Any Alleged Adverse Employment Actions and His Race.

Bosnak has not created a triable issue of fact that the incidents he contests were taken as a result of discriminatory animus. Bosnak has not presented direct evidence of discriminatory animus, i.e., explicitly racist or discriminatory statements or actions by the employer. *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027 (9th Cir. 2005). A party cannot create an issue of material fact simply by making assertions. There must be specific, admissible evidence identifying the basis for the dispute. *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Nor may a plaintiff escape summary judgment by denying the credibility of the defendant's proffered reasons for the challenged action, or by asserting his belief that the challenged action was unnecessary or unwarranted. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 n.6 (9th Cir. 2006). Bosnak's burden is also not met simply because he belongs to a

different protected category than the alleged bad actor, or from someone allegedly provided more favorable treatment. *Guthrey v. State of Cal.*, 63 Cal.App.4th 1108, 1118 (1998).

When asked why the alleged discriminatory acts were related to his race, Bosnak stated in deposition: because there were very few or no Caucasians working in the department at the time (Bosnak Dep. 40:3-13), because only Asians were being hired in the kitchen at that time (Bosnak Dep. 46:3-47:8), because other people (of Latino, Asian, and Filipino descent) got more discipline than him and were not terminated (Bosnak Dep. 57:18-60:21); because others were not disciplined for similar incidents as him (Bosnak Dep. 91:18-93:9)[4] or things he feels he would have been disciplined for (Bosnak Dep. 63:24-67:16); because every other employee in the Department got a PAR (Bosnak Dep. 73:9-74:20); because he is one of the only Caucasians and he has never seen it happen before (Bosnak Dep. 106:4-107:2); and finally, because he has never seen another termination arbitration take so long, although he could not give any specific examples of any that were quicker (Bosnak Dep. 109:1-110:25.) None of these assertions provide specific admissible evidence of an intent to discriminate based on Bosnak's race.

### B. The City Had Legitimate, Nondiscriminatory Reasons For Its Actions

Bosnak has not offered any evidence that the City's legitimate, nondiscriminatory reasons for the conduct he identifies were pretext for discrimination. For each of the incidents Bosnak alleges are discriminatory, the City has offered the following reasons:

- Bosnak alleges that several employees, namely Allan Zhu, Don Chan, and Dennis Won, continued to work at LHH after Bosnak was bumped in 2010. He alleges that their positions were eliminated just as his was, but these employees were allowed to continue to work in a different position, rather than being laid off and made to reapply as Bosnak was. (Bosnak Dep. 36:12-40:2.) The City has shown that each of these employees had a situation which was distinct from Mr. Bosnak's and therefore the same civil service rules and procedures did not apply to them. (Ramirez Dep. 25:2-28:22; Ramirez Dec. ¶¶ 19-20.)

- Bosnak alleges that City procedures were not followed regarding his layoff (or being "bumped") in 2010. (Bosnak Dep. 40:14-46:2.) Sherburne testified extensively to the fact that the city has very detailed procedures which were followed with regard to Bosnak's layoff. (Sherburne Dep. I, *passim*.) Additionally, Bosnak was offered the very rare privilege of being offered a position through a Near List appointment so that he could return to employment at LHH. (Bosnak Dep. 137:16-25, Ex. 31, Ponder Dec. ¶¶ 5, 7.) Finally, he eventually did return

---

[4] This incident is in relation to Robert Hunt, who is also Caucasian, like Bosnak. (Ramirez Dec. ¶ 16.) Bosnak stated in his deposition that he did not know Hunt's race. (Bosnak Dep. 91:5-7, 92:11-14.)

to the role of chef once a vacancy became available. (Bosnak Dep. 27:12-28:4, Ex. 3, 29:12-16.) The City has repeatedly assisted Bosnak in his efforts to remain employed.

- Progressive discipline was not properly followed with regard to his termination from LHH in 2013. (Bosnak Dep. 47:9-57:17.) The City has provided evidence as to its reasons for terminating Bosnak, i.e., intimidating colleagues with a knife, harassing them regarding their qualifications, and repeated aggressive and angry outbursts toward his colleagues and supervisors. (Bosnak Dep. 48:1-49:25, Ex. 8, Din Dep. 99:6-101:8.) Ramirez has testified as to what specific procedures were utilized in Bosnak's termination. He also established that progressive discipline proscribes that in the event of a particularly severe incident or series of incidents, more severe discipline is envisioned, up to and including termination. (Ramirez Dec. ¶¶ 8, 9, Ex. B,)

- Bosnak alleges that another cook, Robert Hunt, had an issue regarding burnt rice but was never disciplined for it. Whereas Mr. Bosnak was disciplined for a similar incident and that incident was ultimately included as one of the events that led to his termination in 2013. (Bosnak Dep. 90:4-91:17.) According to Bosnak, Hunt's supervisor was Collins, whereas the supervisor who disciplined Bosnak for his rice incident was a different Chef, Rodney Garrick. (Bosnak Dep. 64:14-66:12.) Hunt is, like Bosnak, Caucasian. (Ramirez Dec. ¶ 16.) Additionally, Bosnak was not disciplined for the act of burning the rice itself, but for his insubordinate attitude and actions once asked to correct the rice. (Garrick Dep. 44:4-49:15, Ex. B.) Finally, Bosnak testified that this discipline was never actually processed because he was terminated in the interim. (Bosnak Dep. 64:12-67:6, Ex. 14.)

- Bosnak feels that the arbitration on his termination, which ultimately lead to his reinstatement, took longer than the time periods proscribed in his union's contract with the Hospital, and this unnecessarily delay was discriminatory. (Bosnak Dep. 108:10-25.) Ramirez has testified that the amount of time for Bosnak's termination, approximately sixteen months, is exactly typical of the amount of time for a termination arbitration to take place. (Ramirez Dec. ¶ 23.) Additionally, Bosnak was awarded back-pay for the entire time he was waiting for his arbitration to occur, minus a two week suspension which was upheld by the arbitrator in lieu of the suspension. (Ramirez Dec. ¶¶ 12, 13.)

Because Bosnak has failed to meet his burden to establish that a discriminatory reason more likely motivated the City, or that its proffered explanation is unworthy of credence, the Court GRANTS the City's Motion as to Bosnak's race discrimination claims (Third, Fourth, and Sixth Claims for Relief).

## II.   BOSNAK'S ASSOCIATIONAL DISCRIMINATION CLAIM

Bosnak's second claim for relief alleges associational discrimination in violation of Title VII. As discussed above, in an employment race discrimination suit generally, Plaintiff bears the ultimate burden of establishing that he suffered an adverse employment action that was motivated by intentional discriminatory animus. *Guz v. Bechtel Nat'l, Inc.,* 24 Cal.4th 317, 353-58 (2000). On summary judgment, the Court uses a three-part system that governs the presentation of proof and shifts

the burdens between the parties. *Guz,* 24 Cal.4th at 354; *Caldwell v. Paramount Unified School Dist.,* 41 Cal.App.4th 189, 195-96, (1995).

In evaluating this standard on a motion for summary judgment, courts apply the same *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 "shifting burdens" analytical framework to associational discrimination claims that they do to race discrimination claims generally. *Surrell v. Cal. Water Serv. Co.,* 518 F.3d 1097, 1103, 1105 (9th Cir. 2008). Under this framework, a plaintiff must first prove a *prima facie* case that (1) he is a member of a protected class; (2) he was qualified for the position he sought or was performing competently in the position he held, (3) that he suffered an adverse employment action; and (4) that there is a causal link between plaintiff's status and the adverse action. *Id.* at 1107-1108; *Fonseca v. Sysco Food Servs. of Ariz., Inc.,* 374 F.3d 840, 847 (9th Cir. 2004).

Additionally, in order to prove a claim for associational discrimination, a Plaintiff must show that he has been subjected to an adverse action because his employer disapproves of an interracial association. *Holcomb v. Iona College,* 521 F.3d 130, 139 (2d Cir. 2008). In the case where an employee is asserting a claim for associational discrimination, therefore, the plaintiff's association takes the form of the first prong of the prima facie case elucidated above, or that his protected class is his interracial association. *Id.*; *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.,* 156 F.3d 581, 589 (5th Cir. 1998), vacated in part on other grounds by *Williams v. Wal-Mart Stores, Inc.,* 182 F.3d 333 (5th Cir. 1999); *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.,* 173 F.3d 988, 994-95 (6th Cir. 1999); *Parr v. Woodmen of the World Life Ins. Co.,* 791 F.2d 888, 892 (11th Cir. 1986). Therefore, Plaintiff must show that he was subject to an adverse employment action, and that there is a causal link between that action and the Plaintiff's association with the member of the protected class.

### A. Plaintiff Failed to Identify Evidence Creating a Triable Issue Of Fact That There Was a Causal Link Between Any Alleged Adverse Employment Actions His Association With Mr. Chew or Mr. Collins

Bosnak has not established that the incidents he contests were taken as a result of discriminatory animus based on his association with Collins or Chew. Just as with his claims of race discrimination, Bosnak has not offered any direct evidence of discriminatory animus, i.e., explicitly

racist or discriminatory statements or actions by the employer. *Dominguez-Curry* 424 F.3d at 1027. A party cannot create an issue of material fact simply by making assertions. There must be specific, admissible evidence identifying the basis for the dispute. *S.A. Empresa* 690 F.2d at 1238. Nor may a plaintiff escape summary judgment by denying the credibility of the defendant's proffered reasons for the challenged action, or by asserting his belief that the challenged action was unnecessary or unwarranted. *Cornwell* 439 F.3d at 1028 n.6. Bosnak's burden is also not met simply because he belongs to a different protected category than the alleged bad actor, or from someone allegedly provided more favorable treatment. *Guthrey* 63 Cal.App.4th at 1118.

When asked why he felt the alleged discriminatory conduct was related to his association with Collins and Chew, Bosnak states: because of the poor treatment that Collins received at LHH (Bosnak Dep. 77:22-78:13); because he supported Collins by speaking to Collins and Chew about that treatment (and no one else) (Bosnak Dep. 78:14-79:10, 107:25-108:9); because another employee engaged in a similar infraction and was not disciplined[5] (Bosnak Dep. 91:18-93:9); because the staff generally must have known about his EEOC claim and his lawsuit by that time (Bosnak Dep. 93:10-97:24); because Bosnak was treated differently than other people (Bosnak Dep. 97:25-98:17, 100:15-102:14); because the three of them filed a lawsuit together (Bosnak Dep. 98:18-99:7); and went to each other's depositions in those lawsuits (Bosnak Dep. 115:8-116:2); because Collins was trying to get a PAR done for Bosnak (Bosnak Dep. 107:3-24); and because Collins testified at Bosnak's termination arbitration on his behalf (Bosnak Dep. 111:1-115:7). He has offered no evidence of any discriminatory animus toward him based on his association with Collins or Chew that is based on either Collins' or Chew's race, Bosnak's own race, or any interracial association between any of the three of them, or even of any disapproval of his association with either of them on any level. In fact, all three testified that they have never heard anyone at LHH make a negative comment on any association or relationship between them. (Bosnak Dep. 82:8-11; Collins Dep. 29:6-12; Chew Dep. 29:3-9.)

---

[5] This was in reference to the issue wherein employee Hunt burned rice but was not disciplined for it. However, as noted above, Bosnak was disciplined for his insubordinate attitude with regard to this incident, and that discipline was never actually carried out. (Bosnak Dep. 64:14-67:6.)

Furthermore, Bosnak's associations with Collins and Chew are threadbare, at best. As noted in the Statement of Facts Section (D.) above, Bosnak states that his relationship with both Mr. Collins and Mr. Chew are work-based – he has never socialized with either of them outside of work. (Bosnak Dep. 30:19-31:10, 31:24-32:3) He stated there is nothing about his relationship with either of them that sets it apart from his relationship with any other Chef (Collins) or Trayline Supervisor (Chew) at the Hospital. (Bosnak Dep. 31:7-10, 32:15-22) Collins and Chew each agree with this assessment. (Collins Dep. 25:20-16:2; Chew Dep. 23:16-24:3.) Both Collins and Chew have supported Bosnak via speaking with him and empathizing, but neither has assisted him with his lawsuit or any protected activity, nor has he assisted them in such a way. (Bosnak Dep. 31:11-33:2; Collins Dep. 28:1-29:5; Chew Dep. 25:23-27:12.) At no point did any of the three assert that any of them spoke up for each other based on their race.

Accordingly, because Bosnak has failed to meet his burden to establish that a discriminatory reason more likely motivated the City, or that its proffered explanation is unworthy of credence, the Court GRANTS the City's Motion as to Bosnak's associational discrimination claim (Second Claim for Relief).

**III.  BOSNAK'S RETALIATION CLAIMS**

Courts utilize the same "shifting burdens" framework noted above to address claims of retaliation under section 1981. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 at 518 (1993); *Surrell*, 518 F.3d at 1107-08. To establish a *prima facie* claim, Bosnak must establish that: (1) he engaged in a protected activity; (2) he was then subjected to an adverse employment action; and (3) there exists a causal link between the protected activity and the adverse employment action. *Id.* If Bosnak establishes a *prima facie* case, the burden then shifts to the City to articulate a legitimate, non-retaliatory reason for its actions, shifting the burden back to Bosnak to show that the asserted reason was a pretext for retaliation. *Id.*

Bosnak complains that he has been retaliated against in the following ways. First, he states that he was treated differently from Allen Zhu, Don Chan, and Dennis Won in that he was bumped from his position and made to reapply, while they were allowed to continue to work in different positions rather than reapplying. (Bosnak Dep. 118:6-119:25.) He feels that this was retaliation

generally for his filing DFEH and EEOC complaints. (Bosnak Dep. 120:1-12.) Second, Bosnak alleges that he was not given the jobs he applied for after being laid off or "bumped" from LHH in 2010 in retaliation for his DFEH and EEOC complaints (Bosnak Dep. 120:13-144:7.).

### A. Plaintiff Failed to Identify Evidence Creating a Triable Issue of Fact That There Was a Causal Link Between Any Alleged Adverse Employment Actions And His Protected Activity

Bosnak has not established a causal link between the Department's conduct and his protected activity. A causal link can be established by "an inference derived from circumstantial evidence, such as the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision." *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 615 (1989) (quotations and parentheses omitted); *see also Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). However, the Ninth Circuit has held that employment decisions made when the decision-maker did not know that the affected employee had engaged in protected activity cannot be causally linked to such activity. *Cohen v. Fred Meyer, Inc.* 686 F.2d 793, 796-797 (9th Cir. 1982). Additionally, "[t]o show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that h[is] protected activity was the likely reason for the adverse action." *Id.* at 796.

Bosnak has not established or even alleged that any of the decision-makers involved in the conduct he describes as retaliatory knew of his protected complaints. In fact, he has not even identified decision-makers for the retaliatory conduct he describes. Therefore he has not established a link between the conduct and any protected complaints.

### B. The City Had Legitimate Non-Retaliatory Reasons for All Adverse Employment Actions

In addition to failing to establish a *prima facie* case of retaliation, Bosnak has also not rebutted the City's legitimate, non-retaliatory reasons for the conduct he alleges. With regard to Bosnak's allegations that he was treated differently than Chan, Won, and Zhu, his assertions regarding their employment status and that of their positions is simply incorrect. None of them had a position which was eliminated, nor were they laid off, or impacted by a lay off in another department like Bosnak was. Chan was a baker who remained in the same position, but assumed new duties when LHH

moved to a new location in 2010. (Ramirez Dep 25:2-28:22.) Zhu applied for a new position within LHH several times, took an exam, and was eventually hired for the position off of an eligibility list. (Ramirez Dec. ¶ 19.) Won worked temporarily in an Acting Assignment for approximately one year, but stayed within his same position and job classification the entire time. (Ramirez Dec. ¶ 20.)

With regard to each of the positions Bosnak applied for after he was laid off in 2010 (Bosnak Dep. 164:15-25, Ex. 32), the City has produced legitimate business reasons as to why he was not hired:[6]

- Bosnak's September 26, 2010 application for 2606 Senior Food Service Worker: Bosnak was overqualified for this position and the hiring chair was looking for someone that he could retain long term. (Dutton Dec. ¶9.)

- Bosnak's December 3, 2010 application for 2650 Assistant Cook: Bosnak did poorly in the interview. (Cecconi Dep. 45:24-48:13.) The applicant hired or the position was ranked number one on the Eligible list, meaning that she did the best on the exam. (Bosnak Dep. 132:15-25.)

- Bosnak's March 4, 2011 application for 2604 Senior Food Service Worker: Bosnak did not respond to an inquiry from LHH regarding his interest in being interviewed for the position. (Khaw Dec. ¶¶ 4, 5, Ex. A.)

- Bosnak's March 23, 2011 application for 2620 Food Service Manager Administrator (at Zuckerberg San Francisco General Hospital ("ZSFGH")): Bosnak did not respond to an inquiry from ZSFGH regarding his interest in being interviewed for the position. (Hill Dec. ¶¶ 4-10.)

- Bosnak's March 26, 2011 application for 2606 Senior Food Service Worker: Bosnak was overqualified for this position and the hiring chair was looking for someone that he could retain long term. (Dutton Dec. ¶9.)

To the extent that Bosnak has attempted to allege that his 2013 termination was retaliation for his 2013 DFEH complaint, the City has also set legitimate reasons for that termination. (Bosnak Dep. 48:1-49:25, Ex. 8; Ramirez Dec. ¶¶ 8-20, Ex. B.) Additionally, the City has offered evidence that Bosnak was terminated on April 25, 2013 (Ramirez Dec. ¶ 7, Ex. A) and that the City did not receive notice of Bosnak's 2013 complaint until July 31, 2013. (Ramirez Dec. ¶ 25, Ex. E.)

---

[6] There is one additional position that Bosnak applied for, that of 2654 Cook, on June 14, 2010. (*See* Bosnak Dep. 164:15-25, Ex. 32.) He was notified that he did not receive the position on August 31, 2010. (Bosnak Dep. 120:13-121:3.) Since he did not file his first protected complaint until September 1, 2010, (Bosnak Dep. 120:6-16) the Court assumes Bosnak is not alleging that this failure to hire was retaliatory. Bosnak has not alleged anywhere in the record that it was.

Bosnak has not created a triable issue that any of the City's legitimate business reasons for the conduct he describes above are pretext, therefore he cannot survive summary judgment. Accordingly, because Bosnak has failed to establish a prima facie case for retaliation, the Court GRANTS the City's Motion as to Bosnak's retaliation claims (First and Seventh Claims for Relief).

## IV.     BOSNAK'S EQUAL PROTECTION CLAIM

In order to state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, Plaintiff must show that Defendants acted with an intent or purpose to discriminate against the Plaintiff based upon membership in a protected class. *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). In opposition to a motion for summary judgment, a plaintiff must demonstrate that the defendants "treated similarly situated individuals in a disparate manner." *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1360 (6th Cir. 1996).

### A.     Plaintiff Failed to Identify Evidence Creating a Triable Issue of Fact That He Was Treated Differently Than Other Similarly Situated Individuals

Bosnak argue he was treated differently from other similarly situated employees because others were disciplined but not terminated in the same fashion that he was (Bosnak Dep. 156:24-163:19), he was not given an automatic position off of his Holdover List after he was laid off in 2010 (Bosnak Dep. 163:20-168:7), and his termination arbitration took a year to occur (Bosnak Dep. 168:25-170:3). The employees Bosnak names with regard to discipline are Steve Ojala, Alciro Mirano, Allen Zhu, and Dennis Won. (Bosnak Dep. 1656:24-163:19.) All of these employees were Food Service Workers (Ramirez Dec. ¶¶ 19-22), whereas Bosnak was a cook when he was terminated (Ramirez Dec. ¶ 7, Ex. A). They were not similarly situated to Bosnak because they were employed in different positions, and different supervisors investigated and considered their altercation in deciding whether or not to discipline them, reviewed their past disciplinary history, and determined the weight of the allegations against them, as well as their credibility.

In order to identify the motivation behind the alleged discriminatory intent, Bosnak must identify others in the same class as himself, i.e., other cooks accused of mistreating colleagues in the same manner as Bosnak did to his peers. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir.

2005) (stating, "[t]he groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified.")  Moreover, an "equal protection claim will not lie by conflating all persons not injured into a preferred class receiving better treatment" than the Plaintiff.  *Id.* at 1167.  In order to establish disparate treatment, Bosnak must produce evidence that other cooks who engaged in repeated aggressive, threatening, and harassing conduct toward their peers and supervisors were permitted to do so without being terminated by LHH.  *Id.*  Bosnak has not produced any evidence to support this position.

Additionally, as described earlier, Bosnak has not created a triable issue of fact that the incidents he contests were taken as a result of discriminatory animus.  Bosnak has offered no direct evidence of discriminatory animus, i.e., explicitly racist or discriminatory statements or actions by the employer.  Nor has he offered any circumstantial evidence that animus motivated his supervisors' conduct.

Because Bosnak has failed to identify evidence creating a triable issue of fact that he was treated differently than other similarly situated individuals, the Court GRANTS the City's Motion as to Bosnak's Equal Protection Claim (Eighth Claim for Relief).

## V.    BOSNAK'S DUE PROCESS CLAIM

### A.    Bosnak Failed to Identify Evidence Creating a Triable Issue of Fact That Defendants Violated his Procedural Due Process Rights

Bosnak argues his procedural due process rights were violated in two ways.  First, he contends did not receive a competent *Skelly* hearing because a member of management team presided over the meeting rather than an independent non-biased person.  Pl.'s Opp'n at 16; *Skelly v. State Personnel Bd.*, 15 Cal. 3d 194 (1975).  Second, he contends Defendants failed to follow their own rules and regulations in disciplining him.  *Id.*  He contends these actions wrongfully deprived him of his right to make a living.  Pl.'s Mot. at 8.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.  When protected interests are implicated, the right to some kind of prior hearing is paramount.  But the range of

interests protected by procedure due process is not infinite." *Board of Regents v. Roth*, 408 U.S. 564, 568 (1972). To be enforceable through Section 1983, the underlying right must be protected by the Constitution or the laws of the United States.

### 1. Protected Interest

The Court thus first examines whether Bosnak has established a triable issue of fact exists whether Defendants invaded his right to liberty or property.

A State's refusal to reemploy a person could implicate liberty interests if the State made "any charge against him that might seriously damage his standing and associations in his community" or imposed on him "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Id.* at 573; *see also Federal Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 477 (9th Cir. 1991) ("*FDIC*") ("An individual has a liberty interest in employment protected by the Due Process Clause if the dismissal is 'for reasons that might seriously damage his standing in the community,' . . . or if the dismissal effectively precludes future work in the individual's chosen profession. . . .")." Bosnak offers no evidence establishing a triable issue exists that Defendants' actions seriously damaged his standing or associations in his community or foreclosed his freedom to take advantage of other employment opportunities. On the contrary, evidence shows Plaintiff remains employed at LHH.

To establish a property interest in a benefit such as employment by a public entity, "a person clearly must have more than an abstract need or desire for it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vendicate those claims." *Id.* at 577. Such a property interest could be created by the terms of a contract. *Id.* at 578. It can also by created by law. *See Skelly*, 15 Cal. 3d at 207 ("The California [State Service] Act endows state employees who attain permanent status with a substantially identical property interest. Such employees may not be dismissed or subjected to other disciplinary measures unless facts exist constituting 'cause' for such discipline . . . Therefore, the state must comply with procedural due process requirements before it may deprive its permanent employee of this property interest by punitive action."). Plaintiff has established a triable issue that he had a

property interest in his position, as the terms of the Collaborative Bargaining Agreement to which he was party prevented LHH from terminating him without cause.

### 2.    Due Process Violation

"Due process" does not mean perfect adherence to the employer's rules regarding progressive discipline.  *Cf.* Pl.'s Mot. at 7.  It means complying with the standards of due process outlined by the California Supreme Court in *Skelly*.  In *Skelly*, the California Supreme Court held due process did not require "a full trial-type evidentiary hearing prior to the initial taking of punitive action" but that preremoval safeguards before the discipline became effective at a minimum" must include "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." 15 Cal. 3d at 215.  Bosnak has not identified evidence creating a triable issue of fact that he did not receive notice, the reasons therefore, a copy of the charges, and the right to respond.  On the contrary, he testified at his deposition that he received a letter stating the grounds for discipline, had a hearing, and had the right to respond.  Bosnak Dep. & Ex. 8.  Bosnak fails to create a triable issue that Defendants failed to follow their own rules in terminating him or that whatever failures caused a violation of his constitutional rights to due process.  Pl.'s Mot. at 7.

Finally, Bosnak cites no law supporting his argument that the attendance of a member of management deprived him of his right to a fair *Skelly* hearing, and identifies no evidence to create a triable issue of fact that individual was, in fact, partial or affected the outcome of the proceeding.  *See* Pl.'s Opp'n.

### B.    Bosnak Failed to Identify Evidence Creating a Triable Issue of Fact That Defendants Violated his Substantive Due Process Rights

It is not entirely clear whether Bosnak asserts a substantive due process violation.  He does not specifically oppose Defendants' arguments on this ground.  *See* Pl.'s Opp'n at 14-16; Pl.'s Reply at 2-3 (conceding in footnote that Defendants correctly quote *FDIC*, but that *FDIC* misinterprets the cases on which it relies).  To the extent Plaintiff does assert such a claim, and to the extent that claim is recognized with respect to public employees (Defs.' Reply at 10 (arguing the "Ninth Circuit has never recognized substantive due process rights with respect to public employees")), it fails.  To establish a

substantive due process violation, a plaintiff must show he is unable to pursue a job in his profession. *See FDIC*, 940 F.3d at 474; *see also Lebbos v. Judges of Superior Court*, 883 F.2d 810, 818 (9th Cir. 1989) (plaintiff stated substantive due process claim by alleging defendants' actions deprived her of the ability to practice law); *Benigni v. City of Hemet*, 879 F.2d 473, 478 (9th Cir. 1988) (evidence showed substantive due process violation because defendants' actions infringed on plaintiff's "right to pursue an occupation").  Bosnak cannot make this showing:  he is currently employed, in his profession, by the City.  There also is no evidence his termination from LHH, had it not been overturned by the arbitrator, would have precluded his employment as a cook (the position he held at the time) by another employer.

For these reasons, the Court GRANTS Defendants' Motion for Summary Judgment as to Bosnak's due process claim(s) (Ninth Claim for Relief).

## VI.    CONCLUSION

Based on the analysis above, the Court hereby GRANTS the City's Motion for Summary Judgment.  The Court DENIES Bosnak's Motion for Summary Judgment.  Because there is no evidence of discrimination, retaliation, or Constitutional violations, the Court need not reach the issue of qualified immunity, nor Bosnak's arguments regarding the affirmative defenses.

The Court will enter a separate judgment pursuant to Rule 58.

**IT IS SO ORDERED.**

Dated:  October 16, 2017

By:
MARIA-ELENA JAMES
United States Magistrate Judge